Joseph PROSKY, Plaintiff,
and
Liberty Mutual Insurance Company, Added Party Plaintiff,

v.

The NATIONAL ACME COMPANY, a Cleveland, Ohio Corporation, Defendant and Third-Party Plaintiff,

v.

BRUCE'S BOWER ROLLING BEARING, a Division of the Federal Mogul Corp., Third-Party Defendant.

Civ. A. No. 4–72728.

United States District Court, E. D. Michigan, S. D.

Dec. 12, 1975.

Calvin M. Gonek, Detroit, Mich., for plaintiffs.

Joseph J. Bileti, Paul Joseph Schwab, Bileti & Valenti, Reginald S. Johnson, Johnson, Campbell & Moesta, P. C., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Joseph Prosky, plaintiff, brought this diversity action for personal injuries he allegedly suffered while operating a Gridley screw machine manufactured by National Acme Company, defendant and third-party plaintiff.

Plaintiff states in his complaint and answers to interrogatories that when the machine became stuck it had to be hand cranked into reverse because the automatic reverse (a safety feature) had been removed by plaintiff's employer. While plaintiff was cranking the machine it allegedly went into "high gear" with such force as to fracture plaintiff's hand. Plaintiff claims that defendant negligently designed the machine by making the automatic reverse removable, or by failing to incorporate a "fail safe device" that would render the machine inoperative when the automatic reverse was removed.

Defendant impleaded plaintiff's employer, Bruce's Bower Roller Bearing, alleging that the machine was properly designed when it left the factory, and that the employer was actively negligent in removing the automatic reverse. De-

fendant seeks to recover from the employer by way of indemnity or contribution any amount for which defendant should be held liable to plaintiff on the original complaint. The employer has filed this motion to dismiss the third-party complaint claiming that it fails to state a claim upon which relief can be granted.

■ In view of the exclusive remedy provision of the Michigan Workmen's Compensation Act, M.C.L.A. § 418.131, it has been held that no action can be maintained by a tortfeasor against the employer of an injured plaintiff for contribution. *Husted v. Consumers Power Co.*, 376 Mich. 41, 135 N.W.2d 370 (1965). If the third-party complaint is to stand, it must therefore be on the theory of indemnity.

■ The Michigan rule on common law indemnity is that "where the wrongful act of one results in liability being imposed on another, such other person may have indemnity from the person actually guilty of the wrong". *Indemnity Ins. Co. v. Otis Elevator Co.*, 315 Mich. 393, 398–99, 24 N.W.2d 104, 106 (1946), *quoting Village of Portland v. Citizens Telephone Co.*, 206 Mich. 632, 636, 173 N.W. 382 (1919). This rule has been applied by the Michigan courts in certain circumstances to permit persons held liable to employees to recover indemnity from the employers of the primary plaintiffs despite the immunity of the employers under the Workmen's Compensation Act. Thus, in *Dale v. Whiteman*, 388 Mich. 698, 202 N.W.2d 797 (1972), the owner of a car—held liable to an injured employee of a car wash solely on the basis of the automobile owner's liability statute—was permitted to recover common law indemnity from the owner of the car wash. The car owner was without personal fault, statutory liability requiring nothing more than that the car be operated with his consent. The owner of the car wash, on the other hand, was guilty of the imputed negligence of a second employee, who caused the injuries of the primary plaintiff by negligently hitting him with the car. In *McLouth Steel Corp. v. A. E. Anderson Construction Corp.*, 48 Mich. App. 424, 210 N.W.2d 448 (1973), the owner of a blast furnace was permitted to recover common law indemnity from a contractor hired to reline the furnace, where the contractor's negligence proximately caused the injury to the contractor's employee (primary plaintiff), and the general verdict holding the owner liable to the employee might have been based upon the employee's claim that the work was inherently dangerous and that the owner was therefore vicariously liable for the negligence of the contractor. While noting that "a party seeking indemnification must prove himself free from personal fault", 48 Mich.App. at 430, 210 N.W.2d at 451, the court held that the jury's finding that the owner was negligent "does not preclude indemnification since the jury expressly found such negligence *not* a proximate cause of the injury". *Id.* at 431, 210 N.W.2d at 451 (emphasis original). (It should be noted that common law indemnity was an alternative basis for the court's decision since there was an express contract of indemnity running from the contractor to the owner.) Finally, in *Nanasi v. General Motors Corp.*, 56 Mich.App. 652, 224 N.W.2d 914 (1974), the court held that the pleadings of the owner of a construction site and a general contractor stated a claim for common law indemnity against a subcontractor, the employer of the deceased employee for whose wrongful death the primary tort action was brought. The court stated that "[i]t is true that one alleging common-law indemnity must plead and prove freedom from fault", 56 Mich.App. at 659, 224 N.W.2d at 917, but held that freedom from "active, causal negligence" was sufficient, and that in any case the primary plaintiff pleaded "vicarious liability" on the part of the owner and general contractor by claiming that they were responsible for "inherently dangerous activities".

The common thread running through the *Dale, McLouth* and *Nanasi* cases is the special relationship between the primary defendant and the third-party defendant that permitted the former to be held liable for injuries proximately caused by the negligence of the latter. Whether as the owner of an automobile or the owner of land on which an inherently dangerous activity is conducted, the courts of Michigan permit one who is held liable for injuries directly caused by the breach of a nondelegable duty through the negligence of another to recover complete indemnity from the one directly responsible. The rationale as stated in *Dale* is that "liability should fall upon the party best suited to adopt preventive measures". 388 Mich. at 706, 202 N.W.2d at 801.

The instant case is significantly different from the cases cited above, however, since it involves a claim that the manufacturer of a product might be held liable for the negligence of the user. The relationship between manufacturer and user is qualitatively differ-

ent from that between car owner and driver or between landowner and contractor.[1] Finding no Michigan cases on the point, this court must apply the law as it would be applied by the Michigan Supreme Court if faced with similar facts. *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967).

The precise issue for decision is whether the manufacturer of a negligently designed product can recover common law indemnity from the employer of the injured plaintiff on the ground that the employer caused the injuries by negligently using the product. Guidance may be found in the decisional law of sister jurisdictions.

In *Campbell v. Joslyn Mfg. & Supply Co.*, 65 Ill.App.2d 139, 212 N.E.2d 512 (1965), the court affirmed the denial of a motion to dismiss a third-party complaint for indemnity brought by the manufacturer of a wooden pole (third-party plaintiff) against the employer of the primary plaintiff. The original complaint was for personal injuries suffered when the employee fell from the

---

1. The purpose of imposing liability upon an automobile owner for the negligence of a person driving with his consent is "to promote public safety", *Peyton v. Delnay*, 348 Mich. 238, 248, 83 N.W.2d 204 (1957), in view of the legislative finding that "[a] motor vehicle when operated negligently becomes a dangerous instrumentality". *Moore v. Palmer*, 350 Mich. 363, 391, 86 N.W.2d 585, 595 (1957), *quoting Guerin v. Mongeon*, 49 R.I. 414, 416, 143 A. 674, 675. The statute has the effect both of creating a second possible source of compensation for injured persons and of encouraging automobile owners to exercise care in selecting persons to drive their vehicles. Similarly, liability is imposed upon persons for injuries caused by the negligence of independent contractors hired to perform work involving "danger to others unless great care is used", *McDonough v. General Motors Corp.*, 388 Mich. 430, 439, 201 N.W.2d 609, 612 (1972), in order to place the burden of compensation upon the person enjoying the benefits of the inherently dangerous work, create a second possible source of compensation, and encourage care in the selection of contractors to perform such work. It is true that permitting in-

demnity tends to undercut the deterrent effect of making these duties nondelegable; deterrence is not altogether eliminated, however, because the car owner or employer must still bear the risk that the driver or independent contractor will be judgment proof.

In the case of the manufacturer, on the other hand, even the manufacturer of products normally considered dangerous, the rationale of deterrence does not apply. The manufacturer normally has little control over what course his products will follow in the stream of commerce, thus he cannot choose the ultimate user, and cannot supervise that user to ensure that safety precautions are followed. The only basis for a manufacturer's liability is therefore his own breach of a duty by doing or omitting to do something, while the product is within his control. While it is true that the user of the product may also incur liability for injuries resulting to third parties from his negligence in using it, and that such negligent use may concur with the negligence of the manufacturer in causing a single injury, the liabilities of manufacturer and user are separate and distinct.

pole; the employee alleged that the manufacturer was negligent in manufacturing and treating the pole, and in failing to inspect the pole for defects prior to delivery. The third party complaint alleged that any negligence was "active" on the part of the employer and merely "passive" on the part of the manufacturer. The court rejected the third-party defendant's argument that the employee would have to prove active negligence before he could recover from the manufacturer, which would be a bar to indemnity, stating that it was enough that "any set of facts" might arise in the case showing a right to indemnity. The court did not specify what possible set of facts might justify indemnity in the case at bar, but stated that "[a] determination as to whether the negligence is active or passive could not be made until all of the evidence is heard at the time of trial". 212 N.E.2d at 516.

The *Campbell* case has been superseded, however, by the more recent case of *Burke v. Sky Climber, Inc.*, 13 Ill.App.3d 498, 301 N.E.2d 41 (1973), where the court affirmed the dismissal of a third-party complaint for indemnity brought by the manufacturer of scaffolding equipment against the employer of the primary plaintiff's decedent. The primary plaintiff had sued the manufacturer for the wrongful death of her husband—who was killed when a cable on the scaffold broke in the course of his work—on the theory that the manufacturer was negligent in designing, manufacturing, equipping, inspecting and testing the scaffold, in failing to warn of the danger, or, alternatively, that it was strictly liable in tort for selling a defective product. The third party complaint alleged that the employer had been in sole possession of the equipment for several years prior to the accident, that the employer had negligently failed to maintain the equipment, follow instructions and warn its employees, and that any negligence on the part of the manufacturer was "technical or passive"

whereas the negligence of the employer was "active". The court stated:

> "[A]ll of the charges in the complaint of plaintiff against [the manufacturer] are of active negligence. Thus, if plaintiff recovers a judgment against [the manufacturer], it would necessarily be predicated upon active negligence. This being true, it follows inevitably that [the manufacturer] would not be entitled to indemnity as against [the employer].

301 N.E.2d at 45.

This decision was affirmed by the Illinois Supreme Court in *Burke v. Sky Climber, Inc.*, 57 Ill.2d 542, 316 N.E.2d 516 (1974). That court stated:

> "[H]ad [the manufacturer's] position been sustained by the evidence, it would have presented a successful defense in the Burke action and no indemnity action would have been necessary. In effect, the third-party complaint has alleged a defense and has not established the requisite relationship which would permit consideration of the propriety of an indemnity action under the circumstances."

316 N.E.2d at 519.

Similarly, in the instant case defendant's claim that plaintiff's injuries resulted solely from the negligence of his employer would appear to state a complete defense to the original action rather than a relationship creating liability of the kind that the Michigan courts have recognized as a ground for indemnity.

A possible source of authority for defendant's position, however, is *Smith v. Hobart Mfg. Co.*, 302 F.2d 570 (3d Cir. 1962). The court, applying Pennsylvania law, rejected the third-party claim of the manufacturer of a meat grinder against the employer of the primary plaintiff. The original action was brought for injuries sustained by the primary plaintiff when his hand became entangled in the grinder, on the theory that the grinder was defectively designed. The third-party complaint al-

leged that the employer was negligent in the maintenance and operation of the machine, in that a guard had been removed. The court stated that a possible basis for indemnity[2] would be a finding that the manufacturer was liable to the employer because it should have expected the employer to remove the guard and operate the machine without it, but held the evidence insufficient to permit recovery on this theory.

In the present case the primary basis for the plaintiff's claim is that defendant should have guarded against the possibility that the automatic reverse might be removed, either by making it nonremovable or by installing a device that rendered the machine inoperative if the automatic reverse were removed. This approximates the possible basis for indemnity alluded to in the *Smith* case. That is, plaintiff here is alleging in effect that the manufacturer should have expected the employer to remove the automatic reverse and operate the machine without it. It is, of course, impossible to determine prior to trial whether the evidence will support such a theory or not. The issue is whether the Michigan courts would follow the dictum in *Smith* and permit indemnity on such a showing.

*Smith* was cited with approval in *Byrnes v. Economic Machinery Co.*, 41 Mich.App. 192, 200, 200 N.W.2d 104 (1972), though not on the question of indemnity. The court in *Byrnes* reversed a summary judgment for defendant manufacturer despite the argument that the injury resulted from a misuse of the product. Plaintiff had been injured while manually adjusting a labeling machine when a fellow employee activated the machine; plaintiff alleged that defendant was negligent in failing

to install a safety device that would have deactivated the machine during manual adjustment. While the machine had a guard which plaintiff had removed in order to make the adjustments, the court noted that removal of the guard should have been anticipated by defendant because "[p]laintiff had no choice but to remove the guard to do his job". 41 Mich.App. at 200, 200 N.W.2d at 108. The court held:

> "A manufacturer has a duty to use reasonable care in designing his product to guard against an unreasonable and foreseeable risk. [Citations omitted.] This may even include misuse which may be reasonably anticipated."

41 Mich.App.at 201, 200 N.W.2d at 108.

In the present case plaintiff may prove that defendant should have reasonably anticipated that the user of its machine would remove the automatic reverse. While plaintiff does not claim that its removal was necessary as with the guard in *Byrnes*, he does state in his answer to interrogatory 26 that "[t]he safety device had been removed by management to generate greater production from the equipment". If the machine indeed had greater productive capacity with the automatic reverse removed, the trier of fact might well find that defendant should reasonably have anticipated its removal and should have taken steps to prevent resultant injuries.

Even on such finding, however, Michigan law does not provide a right to indemnity from plaintiff's employer. The *Dale* case requires the indemnitee to be "without personal fault" and states that "liability should fall upon the party best suited to adopt preventive measures and thereby to reduce the likelihood of injury". 388 Mich. at 706, 202 N.W.2d at 801. If defendant is found liable to

---

2. While the opinion refers to "contribution" rather than indemnity, 302 F.2d at 576, it is stated that "a jury found Hobart [the manufacturer] liable to Smith [the employee] and Holiday [the employer] liable to Hobart for the injury sustained by him". 302 F.2d at 571. Since the entire loss was shifted to the employer, it appears that the manufacturer's claim is more properly termed indemnity. *See* Annot., *Products Liability: Right of Manufacturer or Seller to Contribution or Indemnity from User of Product Causing Injury or Damage to Third Person*, 28 A.L.R. 3d 943, 947–48 (1969).

plaintiff because it should have foreseen and guarded against removal of the automatic reverse, it will be guilty of personal fault. This is not the kind of relationship that gave rise to liability in *Dale, McLouth* and *Nanasi*.[3] Moreover, if the injury was indeed caused, as plaintiff says, by defendant's failure to install a safety device, it is defendant as much as plaintiff's employer who, as manufacturer of the machine, is "suited to adopt preventive measures". The court therefore holds that even on the theory of liability most favorable to defendant, the *Smith* dictum would not be followed, and no right to common law indemnity over against plaintiff's employer exists. *See Saad v. John E. Smith's Sons Co.*, 399 F.Supp. 523 (E. D.Mich.1975); *Jones v. New Britain Machine Co.*, No. 4–72190 (E.D.Mich., September 17, 1975).

Accordingly, the motion to dismiss the third-party complaint is granted. An appropriate order may be submitted.